IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XYZ Corporation,<br><br>                Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" HERETO,<br><br>                Defendants. | **Case No.: 1:24-cv-01652**<br><br>**Honorable Jeremy Daniel** |

**DECLARATION OF SHAWN A. MANGANON, ESQ. IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SEAL [DKT. NO. 4]**

      I, Shawn A. Mangano, Esq., of the City of Las Vegas, in the State of Nevada, declare as follows:

      1.     Except as otherwise expressly stated to the contrary, this declaration is based upon my personal knowledge of the following facts and, if called as a witness, I could and would competently testify to the statements made herein.

      2.     I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff, XYZ Corporation, ("Plaintiff").

      3.     I make this declaration in support of Plaintiff's Supplemental Brief in Support of Motion to Seal [Dkt. No. 4] (the "Supplemental Brief").

      4.     To begin with, Plaintiff's action in this case is part of an overall intellectual property enforcement effort against what is believed to be a highly sophisticated criminal network spanning over six (6) of the largest online retail platforms in existence. This has resulted in Plaintiff

1

DECLARATION OF S. MANGANO IN SUPPORT OF PLAINTIFF'S          CASE NO.: 1:24-cv-01652
SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SEAL [DKT. 4]

commencing ten (10) separate actions filed in this judicial district that have named 2,542 Schedule "A" Defendants, most of which are operating on multiple online platforms using Plaintiff's copyright protected images to sell counterfeit goods – all of which could not reasonably be produced independently. Rather, these goods require the selection of materials, most of which are advertised without authorization on the Schedule "A" Defendants' online stores immediately after being posting on Plaintiff's website. This conduct, alone, demonstrates a highly skilled and organized network of counterfeit operators that specifically coordinate with one or more manufacturing factories that have obtained unauthorized access to Plaintiff's material overruns or orders. Simply put, the Schedule "A" Defendants are not independently operating to generate the counterfeit goods sold based on the unauthorized replication of Plaintiff's copyright protected images. This is nothing short of a complex criminal enterprise that uses the Schedule "A" Defendants as distribution pawns over multiple online platforms to derive income for the benefit of the underlying operatives. Unfortunately, taking action against the identified Schedule "A" Defendants is the primary source of recourse available to Plaintiff to redress the infringement of its intellectual property rights.

5. Next, issuance of the requested and anticipated Temporary Restraining Order (the "TRO"), which is presently pending before the Court [Dkt. No. 7], will not immediately restrain and will not render concealment of the identity of the Schedule "A" Defendants in this action unnecessary. Unfortunately, the practical implication of the Court issuing a TRO in this action will, based on Plaintiff's experience attempting to gain compliance with other TROs issued and presented to different online platforms, take multiple weeks to secure the disclosure of the named Defendants' email addresses in order to effectuate electronic service of process, obtain the seizure of any assets held in their online accounts, and to disable their online stores.

6. Specifically, once Plaintiff obtains a TRO from this Court, Plaintiff will be required to submit the TRO to the identified online platform for compliance. From that point, the online platform may request payment of significant sums to perform a compliance review of the identity

2

DECLARATION OF S. MANGANO IN SUPPORT OF PLAINTIFF'S  CASE NO.: 1:24-cv-01652
SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SEAL [DKT. 4]

of the named Schedule "A" Defendants, identify their online accounts maintained on the platform, restrain any and all funds potentially held in said accounts, and provide Plaintiff with relevant email or other addresses applicable for service of the Court's TRO. Throughout this process, which has been determined to take up to three or more weeks, the named Schedule "A" Defendants are permitted to continue to operate their alleged infringing online store fronts through the named platform. Accordingly, the Court's issuance of temporary injunctive relief is only substantively effective in restraining any of the named Schedule "A" Defendants upon full compliance by the identified online platform.

7. Specifically, Plaintiff has obtained a temporary restraining order from Judge Kendall in Case No. 1:24-cv-01807 based on infringement of the same rights asserted in this action but concerning the solicitation of counterfeit products offered on a sister online platform. [Dkt. No. 15.] Due to the online platform's refusal to comply with Judge Kendall's temporary restraining order requirements, Plaintiff has been forced to seek two extensions of her injunctive relief because it has not been provided with e-mail service information relating to the named Schedule "A" Defendants. [Dkt. Nos. 24 and 29.] This despite Plaintiff having paid the online platform over $12,000 in "processing fees" to comply with Judge Kendall's TRO.

8. To date, Plaintiff has taken the following actions seeking compliance with Judge Kendall's Order with the identified online platform, and no such compliance has occurred: (1) sending numerous emails to the online platform; (2) providing the online platform with multiple sets of additionally requested, supporting information; (3) responding to emails from the online platform concerning additional compliance requirements; and (4) paying the online platform over $12,000 in "processing fees" that have, to date, provided no results. Moreover, the online platform at issue before this Court is directly related to the online platform at issue before Judge Kendall. As such, it is more than reasonable to surmise that the online platform at issue in this case will also take more than three weeks to comply with this Court's TRO.

9. As represented in Plaintiff's original submission in support of entry of injunctive relief [Dkt No. 7], there is a significant, real, and credible concern that should its corporate identity be revealed in this action it would immediately result in the liquidation of any online accounts maintained by the named Schedule "A" Defendants in this action, as well as those maintained by these same defendants on other online platforms targeted by Plaintiff in one or more of the other ten (10) pending actions in this judicial district. Simply put, once the identity of a Plaintiff is revealed in one pending action, this information will proliferate throughout the online counterfeit industry, which would result in Plaintiff losing the ability to restrain funds that have been deemed proper under the Court's anticipated TRO, the loss of associated infringing information required to be produced through expedited discovery, and provide Plaintiff will little, if any, meaningful forms of recourse, while allowing the identified criminal network to simply reappear under different online store identifications. Without question, these circumstances demonstrate irreparable harm to Plaintiff absent permitting it to proceed anonymously prior to full compliance with the requirements of the Court's anticipated TRO by the designated online platform.

10. Plaintiff's request is further supported by the fact that a host of Schedule "A" Defendants operate through the assistance of the website "SellerDefense.Cn". This website is used to disseminate currently pending United States intellectual property enforcement actions to a network of potential infringing actors. Our law firm has been identified as an enforcer of intellectual property rights against potential infringers and this action has been specifically referenced in a request for information on the website. Moreover, our law firm has previously been identified as having taken enforcement action against intellectual property infringers on this website. Attached as Exhibit "A" is a true and correct copy of an online printout of search results from the identified website. In addition, Plaintiff is aware that the Schedule "A" Defendants named in Plaintiff's multiple actions have been monitoring its litigation and have been attempting to ascertain the brand at issue.

11.	By refusing to seal Plaintiff's identity in this case, the Court would also potentially render the decisions by at least three other United States District Court Judges related to the enforcement of Plaintiff's claims against some 2,542 Schedule "A" Defendants in this judicial district. Both Judge Kendall, in Case No. 1:24-cv-01807, Judge Wood, in Case No. 1:24-cv-01547 and Case No. 1:24-cv-01689, and Judge Cummings, in Case No. 1:24-cv-01705, have permitted Plaintiff to proceed, at least through compliance with its requested temporary injunctive relief by sealing its identity. These cases collectively involve 1,669 named Schedule "A" Defendants. Plaintiff simply asks this Court to do the same until the identified online platform has fully complied with the issued temporary injunction and taken action to suspend and restrain any and all funds held in their accounts. Absent taking such action, any TRO issued by the Court would simply allow the named Schedule "A" Defendants to identify the claims at issue in this action, drain their current online accounts or otherwise transfer such funds outside of the targeted online platform, and escape actual enforcement of what has been granted based on the Plaintiff's submissions.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Executed on April 30, 2024, in Las Vegas, Nevada.

Respectfully Submitted

By: */s/ Shawn A. Mangano, Esq.*
SHAWN A. MANGANO, ESQ.